UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| Francisco E. Munar, Jr., | )<br>) |
| Plaintiff, | ) 3:15-cv-00215 JWS |
| vs. | ) ORDER AND OPINION |
| Jeh C. Johnson, *et al.*, | ) [Re: Motion at Docket 10] |
| Defendants. | )<br>) |

## I. MOTION PRESENTED

At docket 10 defendants Jeh C. Johnson, et al., ("Defendants") move pursuant to 8 U.S.C. § 1447(b) for an order remanding to the US Citizenship and Immigration Services ("the USCIS") the naturalization petition and complaint of plaintiff Francisco E. Munar, Jr. ("Munar"). At docket 11 Defendants submit the declaration of Immigration Services Officer Lynn Edwards ("Edwards") in support of their motion. Munar opposes at docket 16; Defendants reply at docket 17. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

Munar filed an application for naturalization on November 3, 2014.[1] The USCIS investigated his application pursuant to 8 U.S.C. § 1446(a) and examined him pursuant to § 1446(b) on January 8 and May 21, 2015.[2] According to the USCIS, all of Munar's tests were complete as of May 21, 2015,[3] but it did not decide his application because his "file and testimony raised concerns of fraud."[4]

Approximately one year after filing his naturalization application, Munar filed a petition for naturalization and a complaint with this court in which he seeks the following relief: (1) de novo adjudication of his naturalization application under § 1447(b);[5] (2) declaratory and injunctive relief under the Administrative Procedure Act;[6] and (3) a writ of mandamus.[7] Defendants now move to remand to the USCIS, stating that it is "in a position to adjudicate [Munar's] naturalization application within seven days of remand."[8]

## III. STANDARD OF REVIEW

The parties agree that USCIS did not determine Munar's naturalization application within 120 days of his examination. 8 U.S.C. § 1147(b) provides that

> [i]f there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to

---

[1] Doc. 1 at 2 ¶ 1; Doc. 11 at 2 ¶ 4.

[2] Doc. 11 at 2 ¶¶ 4-5, 7. *See generally* 7-96 Charles Gordon et al., IMMIGRATION LAW AND PROCEDURE § 96.04 (Rev. Ed.).

[3] Doc. 11 at 2 ¶ 7.

[4] *Id.* at 2 ¶ 8.

[5] Doc. 1 at 20.

[6] *Id.* at 21.

[7] *Id.* at 21-22.

[8] Doc. 11 at 3 ¶ 14.

> the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to [the USCIS] to determine the matter.

Once the applicant presents the district court with a §1147(b) request, the district court exercises its discretion in determining whether to decide the naturalization petition or remand it to the USCIS.[9]

## IV. DISCUSSION

For two hundred years, from 1790 to 1990, naturalization applications were decided by courts.[10] This changed with the Immigration Act of 1990, which transferred that authority from the district courts to the Attorney General.[11] The Attorney General has since delegated that authority to the USCIS.[12]

The Immigration Act of 1990 did not remove the courts from the naturalization process entirely, however. The Act reserves for district courts the "final word concerning denial of a naturalization application" under two circumstances: denial and delay.[13] "If a naturalization application is denied, 8 U.S.C. § 1421(c) permits the applicant to seek a de novo review of this denial in district court."[14] Likewise, if the USCIS delays its determination of an application for more than 120 days, § 1447(b)

---

[9]*United States v. Hovsepian*, 359 F.3d 1144, 1161 (9th Cir. 2004) (en banc).

[10]*See* Jessica Schneider, *Waiting to Be an American: The Courts' Proper Role and Function in Alleviating Naturalization Applicants' Woes in 8 U.S.C. § 1447(b) Actions*, 29 St. Louis U. Pub. L. Rev. 581, 583 (2010).

[11]*Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 932 (9th Cir. 2007) overruled on other grounds by *Cardenas-Delgado v. Holder*, 720 F.3d 1111, 1118 (9th Cir. 2013) (citing Pub. L. No. 101–649, § 401 (1990)).

[12]*Id.*

[13]*Hovesepian*, 359 F.3d at 1162-63.

[14]*Yith v. Johnson*, No. 114CV01875LJOSKO, 2016 WL 385505, at *7 (E.D. Cal. Jan. 8, 2016) (citations omitted).

allows the applicant to obtain a de novo proceeding before the district court.[15] Under this statutory scheme, where the district court retains ultimate authority over naturalization applications, § 1447(b) "is best viewed as a mechanism by which naturalization applicants who are impatient with [agency] delay may skip the agency's analysis of their application and proceed directly to the step in which the district court conducts a de novo review of the application."[16]

Although § 1447(b) bestows on the district court this power to review a naturalization application, the court also has the option to remand the application to the USCIS "with appropriate instructions."[17] Neither Congress nor the Ninth Circuit has provided the district courts with clear guidance on how to determine which option is appropriate. The vast majority of district courts remand.[18]

Where statutory language is not dispositive, as here, courts "look to the congressional intent 'revealed in the history and purposes of the statutory scheme.'"[19] Where Congress has made its intent clear, courts must give effect to that intent.[20] In *Hovsepian* an en banc Ninth Circuit panel discussed "four main public policy objectives that Congress sought to further by enacting the Immigration Act of 1990."[21]

---

[15]*Hovsepian*, 359 F.3d at 1162.

[16]*Id.*

[17]8 U.S.C. § 1447(b).

[18]*See, e.g., Ganz v. Lynch*, No. 15-CV-03214-JST, 2015 WL 9474285, at *3 (N.D. Cal. Dec. 29, 2015); *Singh v. Crawford*, No. 1:13-CV-01894-SKO, 2014 WL 1116989, at *3 (E.D. Cal. Mar. 19, 2014); *Maniulit v. Majorkas*, No. 3:12-CV-04501-JCS, 2012 WL 5471142, at *3 (N.D. Cal. Nov. 9, 2012); *Wince v. Gonzalez*, No. CV 07-1572-PHX-MHM, 2008 WL 2668838, at *3 (D. Ariz. June 30, 2008)*; Volovnikov v. DHS*, No. 07-3607(EDL), 2008 WL 666023, at *3 (N.D. Cal. Mar. 6, 2008).

[19]*United States v. Buckland*, 289 F.3d 558, 565 (9th Cir. 2002) (en banc) (quoting *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 642 (1990)).

[20]*Id.* at 564.

[21]*Hovsepian*, 359 F.3d at 1163.

The first two objectives were to "reduce the waiting time for naturalization applicants" and "to streamline the process of applying for naturalization and . . . reduce the burdens on courts and [the USCIS]."[22] Congress transferred naturalization authority to the Executive Branch because, under the former naturalization scheme, some applicants faced "long delays involved in scheduling [naturalization] matters for court approval."[23] In an effort to prevent administrative logjams, Congress provided that if an applicant's decision has been pending for over 120 days he may "file a petition in the court. The court has the ability to make a decision at that time or remand to [the USCIS] for further factfinding."[24] "Although in some circumstances the need for additional fact finding and processing time would be justified," Congress stated, even complex cases "must come to resolution at some point, and if a decision is not rendered in a timely fashion . . . the petitioner is entitled to a decision and hearing on the case."[25] This structure of administrative naturalization and judicial oversight was "designed to help aspiring citizens attain that which they have earned and which is rightfully theirs."[26]

---

[22] *Id.* (citing 135 Cong. Rec. H4539-02 (July 31, 1989) (statement of Rep. Smith) ("In order to streamline the process, H.R. 1630 vests authority for naturalization with the Attorney General, thus providing a one-step process from application to swearing-in. It allows an applicant to give his oath of citizenship in court or in an administrative ceremony.")).

[23] 135 Cong. Rec. H4539-02 (July 31, 1989) (statement of Rep. Morrison, sponsor of H.R. 1630). *See also* H.R.Rep. No. 101-187, at 8 (1989) ("[T]he increasing volume of citizenship applicants and heavy dockets of the Courts in other areas leads the Committee to consider a more streamlined process for those aspiring to citizenship.").

[24] 135 Cong. Rec. H4539-02 (July 31, 1989) (statement of Rep. Morrison). *See also* H.R. Rep. No. 101-187, at 12 (1989) (noting that complicated cases were sometimes "placed on the 'backburner' due to indecisiveness on the part of an examiner who may not be thoroughly versed in the legal technicalities.").

[25] H.R. Rep. No. 101-187, at 14 (1989).

[26] 135 Cong. Rec. H4539-02 (July 31, 1989) (statement of Rep. Morrison).

The third objective that *Hovsepian* identifies is Congress's intent to foster "consistency and fairness of naturalization decisions."[27] For example, Congress hoped that consolidating naturalization authority within the Executive Branch would lead to uniform guidelines "on the criteria for the exam relating to English language and U.S. Government and History."[28] The fourth and final objective that *Hovsepian* identifies is Congress' intent to "to give naturalization applicants the power to choose which forum would adjudicate their applications."[29] As the representative who introduced the bill that eventually became the Immigration Act of 1990 noted, "[i]n this legislation, *it is the applicant, not the government*, who decides the place and the setting and the timeframe in which the application will be processed."[30]

Based on these objectives, it is clear that Congress granted the Executive Branch primary authority over naturalization applications[31] in an effort to speed up the decision-making process. At the same time, Congress did not want complicated applications to remain on an administrative "back burner" indefinitely, and therefore, it provided that applicants may seek relief in the district court after 120 days. It is then up to the district court to determine whether judicial intervention is necessary.

---

[27]*Hovsepian*, 359 F.3d at 1164 (citing H.R. Rep. No. 101-187, at 12-13 (1989)).

[28]H.R. Rep. No. 101-187, at 11 (1989).

[29]*Hovsepian*, 359 F.3d at 1164.

[30]*Id.* (quoting 135 Cong. Rec. H4539–02 (statement of Rep. Morrison)) (emphasis in original).

[31]*See* 8 U.S.C. § 1421(a) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General.").

Based on the facts of this case, judicial intervention is not necessary.[32] Because USCIS has represented that all of its investigations are now complete and a decision will be made within one week, remand is appropriate.

### V. CONCLUSION

Based on the preceding discussion, Defendants' motion to remand at docket 10 is **GRANTED**. USCIS is ordered to adjudicate Munar's application for naturalization within seven days of this order.

DATED this 28th day of March 2016.

/s/  JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[32]*But cf. Omar v. Holder*, 756 F. Supp. 2d 887, 896 (S.D. Ohio 2010) ("Defendants have not requested remand."); *Taalebinezhaad v. Chertoff*, 581 F. Supp. 2d 243, 246 (D. Mass. 2008) ("The Court remained unconvinced after oral argument that Taalebinezhaad's application would necessarily be handled with alacrity if it were to remand the case to USCIS."); *Lifshaz v. Gonzales*, No. C06-1470MJP, 2007 U.S. Dist. LEXIS 28946 (W.D. Wash. Apr. 19, 2007) ("[T]he Court is disturbed by the possibility that a determination on Mr. Lifshaz's naturalization application will be endlessly delayed."); *Irina Vladimirovna Astafieva v. Gonzales*, NO. C 06-04820 JW, 2007 U.S. Dist. LEXIS 28993 (N.D. Cal. Apr. 2, 2007) ("Defendants have provided no indication when action might be taken on her application.").